The circumstances surrounding Mr. Coffer's discard of a firearm during flight do not warrant a sentencing enhancement for recklessly creating a substantial risk of death or serious bodily injury under 3C1.2. It is undisputed that the accidental discharge was impossible under these circumstances. So instead, the District Court found that the discard of the firearm accidentally and hurt themselves or someone else with it. This finding is not supported by the facts and also the case law. Roberts Copperman, Jr. Ms. Quick, I would like to begin, if we could, by talking about the standard of review. Ms. Quick Yes. Roberts Copperman, Jr. To me, this case probably turns on the standard of review. In other contexts for other sentencing enhancements regarding the creation of substantial risk, we have said that, quote, we review de novo the application of the substantial risk of a firearm standard to the undisputed facts. But in other cases dealing with similar enhancements, we have applied a clear air standard. I also note that in some circuits, they apply a de novo standard of review to whether or not the government has met their burden of proof. What are the appropriate standards of review here? Ms. Quick So the appropriate standard of review, and I had a recent case with this, the Keontae Martin case from this Court, where they said clear air for the findings. But when it comes to the application of the guideline, that is de novo. Roberts Copperman, Jr. The findings are that he discarded a gun at 1 o'clock in the morning on concrete in the driveway of a tax business. It was loaded, but it was unlikely to discharge. That's clear air.  Roberts Copperman, Jr. But what about the determination that it created a substantial risk? Ms. Quick Our position is that would be de novo. It's kind of a mixed question of legal fact, which is generally de novo anyway, but it's a question of application of the guidelines, which is a legal question. So our position is that would be de novo. We quibble a bit about whether they saw the firearm and what that means, but there's really no factual dispute at issue here today on appeal. It really just boils down to do these facts show a substantial risk of, create a substantial risk of death or serious bodily injury? And our position is that they do not. Roberts Copperman, Jr. All right. So the argument really is essentially that even if you discard a gun after dark, at night, in a parking lot, and you flee, that that gun laying there is a loaded gun by and of itself just doesn't pose a substantial risk of harm to someone?  Notwithstanding, I have to say this, because it was in April and it was in tax season and it was in a company's parking lot, maybe it had bigger risk then than it would have had in, say, June. But whatever the story is, right? I mean, it's the risk of being found, and it doesn't, you're saying there's no dispute that it doesn't matter whether the officer saw it or knew it was there or would find it or did find it. It's just that that loaded gun doesn't pose much risk at that point. I think, I don't necessarily need to push back a bit, but I think it's fact-specific in the sense of, was it discarded in a manner, in a place, that the officers were more likely to find it than a random person and someone who could find it and accidentally hurt themselves or others?  A lot of... Is that enough? Is that enough that if the officers were more likely than the pedestrian to find it, wouldn't it still be a substantial risk if there's a 49% chance that a pedestrian would happen upon it? No, Your Honor. And we see that from the case law. There's not, I could not find any Eighth Circuit case law that's simply just about risk of someone picking it up and hurting themselves or others. But in the cases that do from other circuits discuss, you know, is it relevant that officers could find it quickly? The courts find it much more relevant if it's something that officers are able to easily find and pick up, or if it's discarded in an area where there's people around. The Third Circuit, when analyzing this issue, discussed the presence of other people who could potentially pick it up. The Ninth Circuit discussed, was it discarded in a residential area as opposed to an area where there's just more businesses, like here, where it's a more commercial area? So courts do analyze that as opposed to, and that's incredibly relevant to the analysis. Is it somewhere where someone could potentially pick it up? Does the characterization of this particular firearm as having a toy-like appearance distinguish this case from makes and shivers, two cases which seem to support your claim? No, Your Honor. I think it boils down to, no matter what it looks like, at the end of the day, this was discarded in such a way that law enforcement found it easily. It wasn't, no matter what it looked like, someone wasn't going to come across it. They weren't going to pick it up accidentally and hurt themselves. So maybe in another case where it is a situation where someone could come across it easily and potentially harm themselves or someone else, it could impact that. But under these facts, it should not sway and have this Court think this is distinguishable from the mukes or shivers case. And I would note, we're not arguing that you have to show actual harm. But at the end of the day, the government has to prove that there is a substantial risk of actual harm. And I think that's where the district court erred in this case. And instead, and why we have it as reversible error under de novo review. And that the courts said it's irrelevant that it was picked up and the court said discarding of a firearm in public, wherever it is, creates a substantial risk of harm. That's not the standard here. There has to be proof that the defendant's conduct created a substantial risk of harm. Yes, the fact of harm can be hypothetical, but the creating cannot be hypothetical. Do you agree that we have to look at the situation as of the moment the person discarded the gun? Yes. We don't look at whether the officers did find it. We have to look at what was the likelihood at the time of the discard, right? Yes. Okay. And the shivers case that you cite applies a clear error standard of review. So I gather you like shivers in part, but not in other part? I think what I've come across a lot is the courts will say it's clear error, which is what we see a lot of time when we're talking with guidelines issues. But in our cases from the Eighth Circuit, when the court really breaks it down, it says clear error for findings. And then when we're discussing analysis, when it comes down to whether the legal standard is met, it's de novo. And in shivers, I think that was... Why isn't the degree of risk a factual finding? The question of whether it, if it is a substantial risk or something like... Yeah, how much risk it poses to members of the public. It's sort of a predictive judgment about how risky something is. So that's a legal question for the court to decide. It provides the application of facts to whether this standard is actually met, the substantial risk of harm. But I would know our position in the alternative is even if it's just clear error, full stop. Of course, it's a little bit more difficult for us, but the cases we cite, as the court noted, shivers. And I think Mewkes also discussed clear error. Even in those cases, under the clear error standard, the court reversed for an improper application of this two-level enhancement because the government had not established that the specific facts with a discard of firearms show that there was a risk of someone picking it up and harming someone else. If there are no immediate questions, I would like to reserve the remainder of my time for rebuttal. Thank you. Very well. Thank you for your argument. Mr. Vavracek, we'll hear from you. Thank you, Your Honor. May it please the court and counsel, and I would like to thank the The district court did not clearly err in applying the two-level enhancement under the sentencing guidelines for reckless endangerment during flight. And I would, to follow up on the questions about the standard of review, emphasize that in the government's view, the standard of review should be clear error. We cited in our brief the Williams case, which states that this court reviews for clear error a district court's findings with respect to reckless endangerment for flight. And as pointed out, the shivers case, and I would also point out the Mewkes case cited in the defendant's briefs and discussed there, both apply a clear error standard. Counsel, doesn't it really go back to Judge Kalten's comments about whether or not the determination as to whether something is substantial, whether that is a factual determination or whether that is an application of the facts to determine whether a legal standard has been met and therefore a legal determination? Your Honor, I think the subsidiary question of whether the quantification of risk, substantial risk, is a fact question or a legal question would drive the answer to that. And we would respectfully suggest that determining whether something is risky or not poses a substantial risk is a question of fact, that this court should defer to the district court in the first instance that must make these decisions in the heat of the moment at sentencing. I want to just ask a question about that because it seems to me that when Ms. Quick described that as a mixed question of fact and law, that there is some attraction to that. Because the idea is that you identify the risk of harm, which the judge clearly did, and the risk of harm here is it could be found by an innocent bystander and a child. And given its appearance, which is described as toy-like, that we make the decision on those pieces is that clearly erroneous, right? And so is there a clear error in saying that someone could find it and someone could get shot or killed as a result of that gun having been found, right? But whether that risk is substantial, moderate, or minimal, that that seems to be more of a, you look at the risk that's been identified and then it's a legal question on the extent and nature of that risk. Am I wrong on that? And I know you're going to say yes, and so why? Well, Your Honor, I think, I do think there's some attraction to that. I understand that one reading of it could be that it's a mixed question of law and fact. But I would push back. I would respectfully suggest that the quantification of risk is a fact question. I would not only rely on the Williams case cited in my brief, but when these cases, you know, another way the court asks the question is, did the defendant's conduct grossly deviate from the standard of care that a reasonable person would exercise in this situation? That sounds to me like a fact question that we would ask a jury. And on this question of risk specifically, when we look at the cases, when I look at the cases from the other circuits, they comment that this is highly fact-based. The Meeks case says exactly that, that these are highly fact-based determinations. They cite a prior circuit case called Hazelwood there. And they do say it is a mixed question of law and fact. But the quantification of risk, the district court sitting in the district making these determinations and sentencing, it seems to me, I went back and read the Anderson case, which talked about clear error at the Supreme Court. And it seems to me that these are the fact-based judgment calls that the court would make. So, counsel, let me ask this question. The text of the provision requires that the risk created be substantial. The burden of proof is on the government as to an enhancement. What evidence did the government introduce to show that the risk was substantial rather than insubstantial or theoretical? Thank you, Your Honor. I would emphasize four primary facts for why this was substantial. First, he did not just flee with a firearm. He fled with a loaded firearm. Which the court found was unlikely to accidentally discharge. Yes. We are not pursuing the accidental discharge theory in this case due to the expert evidence that the defense presented. It was loaded. It was loaded with a high-capacity magazine. The defendant reached for the firearm during the chase. Now, this particular fact of the reaching is not something that the district court emphasized or discussed. But the Easter case, for example, out of the Seventh Circuit discusses the danger, the substantial danger that is caused when a defendant during a chase reaches. This defendant, I would note parenthetically, it's undisputed, was intoxicated at the time. And it was dropped not just in any area, but in the driveway of a business in a commercial area, actually a tax business, and it was pointed out. I'm not sure how much this moves the needle, but it was, as my colleague pointed out in the district court, just a couple of weeks before tax deadline day. But it was in a commercial area in the city center of Cedar Falls, Iowa. And this particular firearm, there's always this attraction to firearms by children, but this particular firearm, and we have a picture of it for the court in our addendum. Counsel, do you need to distinguish mukes and shivers, or is it just a matter of different judge, different outcome? I think this is a clear error standard here, so different judges might decide this differently. The court below recognized very explicitly this is a close case. But I do, I did want to distinguish mukes and shivers. There's a common thread through both those cases that it wasn't really clear whether the defendant just sort of dropped the firearm, or whether he had tossed it. So we do think those cases are distinguished. You know, in both the brief and in your argument here, you basically referenced the comment in 2A1.4, talking about the gross deviation standard, which the comment says usually applies in assimilative crimes and not otherwise. And it just strikes me that that gross deviation standard under the common law is what you apply in ordinary criminal negligence cases, right? It's a reckless standard that really requires some kind of gross negligence in order to give rise to criminality. But substantial risk, that's a different standard. Substantial risk is kind of the standard that we apply to, you know, in the bodily injury cases and attempted bodily injury cases that are out there. And so if you just look at the nature of the claim, I mean, I think that if you rely on that gross deviation thing, that you're deviating from the black letter law in such a way that you actually are increasing the burden the government would have to bear. Am I wrong on that? I don't think the burden is so high as it might appear there. It's simply recklessness. And I think this court has already held that with respect to the issue of, there's sort of two issues here, the issue of fleeing instead of just peacefully surrendering. When you're fleeing with a firearm that's loaded, you're reaching for it, and you've got officers hot on your tail, and you're, you know, you're doing all that, that's a reasonable person would do under the circumstances. We then get to the question of the substantiality of the risk. And here, although it is true that these officers through good work found it right away, the fact of the matter is you have this very dangerous, very dangerous item in a city center of Cedar When you say it was in the city center, am I right that this happened at one in the morning? Yes, sir. And it was on a Sunday morning as I understand it, in other words, the end of Saturday night? I believe so, Your Honor. And is this city center location near bars and restaurants and city parks and so forth? I don't believe the record is clear other than that the address, you know, that it was right there in the heart of Cedar Falls in the driveway of a tax business. All right. Thank you for your argument. We'll hear a rebuttal from Ms. Quick. So I want to start with clarifying. MUCS does use the language we're talking about standard of review saying this is a mixed question of law and fact. And also notes that it is highly fact-based. But the fact that it is highly fact-based does not mean this is simply a factual determination. It means that when analyzing whether something is a substantial risk or creates a substantial risk of death or serious bodily injury, we must look very particularly to the facts that are established in this case. And our position is that the district court below did not do that. And when looking to the facts of this case here and looking to similar cases from other circuits, other courts have declined to find and impose this enhancement under similar facts. And as far as the court asking about, you know, is this a situation where you might have college kids around or things like that, Independence Exhibit A, which shows the body cam video and shows the brief flight, there's no one around. It's pretty well lit, especially at the beginning of the flight, and you don't see, like, college students piling out of bars or people walking down the street. My recollection of the video is that there is no one around. Well, that's in the immediate line of sight of the body cam. You don't see a 360 view from the body cam. Okay. I thought the argument here was that if the officers didn't immediately find it, then it would be left in an area where a passerby could find it. And you're saying, well, the officers did find it right away, but that's ex post. I guess I think I'm thinking of them as the same thing. The fact that they found it right away shows it was discarded in an area where they could pick it up right away. The video is very immediate. I think it's 10 or 11 seconds where they hear it or I think they say something like, he's reaching, and the officer immediately picks it up along the path. So I think that fact that they found it makes it clear that it was easily able for the officers to find. Thank you. Very well. Thank you for your argument. The case is submitted and the court will file a decision in due course.